**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JAQUA M.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. EA-25-1079** |
| **FRANK J. BISIGNANO,** | * | |
| Commissioner of Social Security,[1] | | |
| | * | |
| **Defendant.** | | |
| | * | |

**MEMORANDUM OPINION**

On April 1, 2025, Plaintiff Jaqua M. petitioned this Court to review the final decision of

the Social Security Administration (SSA or Commissioner) denying his claim for benefits.  ECF

No. 1.  This case was referred to a United States Magistrate Judge with the parties' consent.[2]

ECF Nos. 3; 5–6; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).  Pending before the

Court is Plaintiff's appeal, which is fully briefed.  ECF Nos. 13, 15–16.  No hearing is necessary.

Local Rule 105.6.  This Court must uphold the decision of the SSA if it is supported by

substantial evidence and if the SSA employed proper legal standards.  42 U.S.C. §§ 405(g),

1383(c)(3); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, and for the

reasons set forth below, the Commissioner's decision is reversed, and the case is remanded for

further proceedings consistent with this Memorandum Opinion.

---

[1]  On April 1, 2025, Plaintiff filed this case against Leland Dudek, who was then the Acting Commissioner of Social Security.  ECF No. 1.  Pursuant to Federal Rule of Civil Procedure 25(d), Frank J. Bisignano has been substituted as Defendant after he became the Commissioner.  *See* https://perma.cc/NA2P-W24T (last visited March 6, 2026).

[2]  This case was reassigned to the undersigned on January 9, 2026.

I.      BACKGROUND

A.      Procedural History

In 2021, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act (the Act), 42 U.S.C. § 301 *et seq.* and 42 U.S.C. § 1381 *et seq.*  ECF Nos. 13 at 1; 9-3 at 26; 9-6 at 2, 9–10.[3]  In both applications Plaintiff alleged a disability onset date of March 5, 2021.  ECF No. 9-3 at 26. Plaintiff claims that he is disabled within the meaning of the Act because he is unable to work due to hidradenitis suppurativa, obesity, post-traumatic stress disorder, generalized anxiety disorder, major depressive disorder, bipolar disorder, and paranoid schizophrenia.[4]  ECF No. 13 at 6.  The SSA initially denied Plaintiff's application for benefits on October 4, 2021.  ECF Nos. 9-3 at 27; 9-4 at 27, 53.  On March 30, 2022, Plaintiff sought reconsideration, and the SSA affirmed its initial denial on May 10, 2023.  ECF Nos. 9-3 at 26; 9-5 at 2–3, 5, 9.  On June 12, 2023, Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on November 28, 2023.  ECF Nos. 9-3 at 26, 43–78; 9-5 at 12–13.  The ALJ rendered a decision on February 26, 2024, in which he found that Plaintiff was not disabled within the meaning of the Act.  ECF No. 9-3 at 26–38.  Plaintiff requested a review of the ALJ's decision, which the Appeals Council denied on February 6, 2025.  ECF No. 9-3 at 2.  The ALJ's February 26, 2024 decision therefore constitutes the final, reviewable decision of the SSA.  *Sims* v. *Apfel*, 530 U.S. 103, 106-107 (2000); 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a).

---

[3]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

[4]  Hidradenitis suppurativa is "a chronic suppurative inflammatory disease of the apocrine sweat glands."  "Hidradenitis suppurativa." Merriam-Webster.com Medical Dictionary, Merriam-Webster, https://perma.cc/RBS2-9NDF. (last visited March 6, 2026).

B.    **Statutory Framework**

The Social Security Act authorizes disability insurance benefit payments to every insured individual who "is under a disability." *Cleveland* v. *Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999) (quoting 42 U.S.C. § 423(a)(1)); *see also Shue* v. *O'Malley*, No. 23-1795, 2024 WL 2827936, at *3 (4th Cir. June 4, 2024).  The Act also authorizes Supplemental Security Income payments to "persons who have a 'disability.'"[5] *Barnhart* v. *Thomas*, 540 U.S. 20, 21 (2003).  Both of these programs define "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

Federal regulations require an ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920.  Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  "The applicant bears the burden of production and proof during the first four steps." *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  At the fifth step, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's

---

[5]  The primary difference between these two disability benefit programs is the applicant's employment history and financial resources. *Delk* v. *Colvin*, 675 Fed. Appx. 281, 282 (4th Cir. 2017) (explaining that the Disability Insurance Program provides benefits to individuals "who have contributed to the program while employed," whereas Supplemental Security Income provides benefits based on financial need); *see also* 42 U.S.C. §§ 423(a)(1), 1381a, 1382.

residual functional capacity, age, education, and work experience." *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted).

If the claimant satisfies step three, there is "an automatic finding of disability," which "relieves the decision maker from proceeding to steps 4 and 5." *Patterson* v. *Commissioner of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). If the claimant does not carry their burden at the third step of the sequential evaluation, then the ALJ must assess relevant evidence and make a finding regarding the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Monroe* v. *Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). Residual functional capacity is defined as "the most [the claimant] can still do despite your [physical and mental] limitations." 20 C.F.R. § 404.1545. The residual functional capacity assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Mascio*, 780 F.3d at 636 (quoting Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims (SSR 96-8p), 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)). "Only after such a function-by-function analysis may an ALJ express [residual functional capacity] 'in terms of the exertional levels of work.'" *Monroe*, 826 F.3d at 187 (quoting *Mascio*, 780 F.3d at 636). The ALJ then uses its residual functional capacity determination at the fourth and fifth steps of the disability assessment. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Monroe*, 826 F.3d at 179.

### C.    The ALJ's Decision

The ALJ initially determined that Plaintiff meets the SSA's "insured status requirements . . . through September 30, 2026." ECF No. 9-3 at 28 (bold removed). At step one of the five-step sequential disability evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. ECF No. 9-3 at 28. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "hidradenitis suppurativa, obesity,

post traumatic stress disorder [ ], generalized anxiety disorder, major depressive disorder, bipolar disorder, [and] paranoid schizophrenia" (*id.* (bold removed)), and the non-severe impairment of hypertension (*id.* at 29). At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."[6] *Id.* at 29 (bold removed and citations omitted). In reaching this conclusion, the ALJ evaluated the "Paragraph B" criteria and whether Plaintiff's mental impairments resulted in "one extreme limitation or two marked limitations in a broad area of functioning." *Id.* at 30. The ALJ found that Plaintiff has a moderate limitation in the area of "concentrating, persisting or maintaining pace" (in addition to the three other functional areas), outlined the evidence that supported his finding, and concluded that the Paragraph B criteria were not satisfied.[7] *Id.* at 30–31.

Before continuing to the fourth step of the sequential evaluation, the ALJ determined that Plaintiff retained the residual functional capacity to:

> perform medium work . . . except lifting and carrying 50 pounds occasionally and 25 pounds frequently; standing and walking for 6 hours in an 8[-]hour day; and sitting for 6 hours in an 8[-]hour day. He can perform jobs consisting of simple, routine, and repetitive tasks, involving only simple, work-related decisions, with only occasional changes in the routine work setting. He can perform jobs with occasional interaction with supervisors, coworkers, and the public. Time off task during the workday can be accommodated by normal breaks, i.e.[,] he is able to sustain concentration and attention for at least 2 hours at a time.

---

[6] Appendix 1 to 20 C.F.R. Part 404, Subpart P provides a listing of impairments. Within Appendix 1, "Adult Listings 12.00 *et seq.* . . . pertain to mental impairments, and consist of (1) 'paragraph A criteria,' which consist of a set of medical findings; (2) 'paragraph B criteria,' which consist of a set of impairment-related functional limitations; and (3) 'paragraph C criteria,' which relate to 'serious and persistent' disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment." *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020).

[7] A moderate concentration, persistence, and pace limitation is within the middle of a five-point scale. *Patterson* v. *Commissioner of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017).

*Id*. at 31 (bold removed). At the fourth step, the ALJ determined that Plaintiff is unable to perform past relevant work as a security guard and janitor. *Id*. at 36. Lastly, at the fifth step, the ALJ determined that considering Plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform. *Id*. at 37 (bold removed). Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, and that the SSA properly denied his applications for benefits. *Id*. at 37–38.

## II.    DISCUSSION

On appeal, Plaintiff argues that the ALJ's assessment of his residual functional capacity did not adequately account for his mental impairments, specifically his limitations with concentrating, persisting, or maintaining pace. ECF No. 13 at 7–16. The Commissioner argues the opposite. ECF No. 15 at 6–16.

### A.    Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed." *Britt* v. *Saul*, 860 Fed. Appx. 256, 259 (4th Cir. 2021) (citing 42 U.S.C. § 405(g)). The Court must affirm the decision "so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence." *Id.*; *accord Mascio*, 780 F.3d at 634; *Coffman* v. *Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Factual findings supported by substantial evidence "shall be conclusive." 42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence.").

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek* v. *Berryhill*, 587 U.S. 97, 102

6

(2019).  Under this standard of review, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* at 103 (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)); *see also Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.").  It is "more than a mere scintilla . . . [and] somewhat less than a preponderance." *Laws*, 368 F.2d at 642.  The "threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997).  Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required.  *Mascio*, 780 F.3d at 636-637; *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015).  Rather, an administrative decision's reasoning need only be "reasonably discernible."  *Garland* v. *Ming Dai*, 593 U.S. 357, 369 (2021).  "Meaningful review is frustrated—and remand necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record." *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

**B.     Mental Impairments and the Residual Functional Capacity Determination**

"When evaluating the severity of a claimant's mental impairments, the ALJ must employ the 'special technique' to rate [the claimant's] degree of limitation in the four broad functional areas known as the paragraph B criteria." *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020) (citing 20 C.F.R. §§ 416.920a(c), 416.925).  The four "paragraph B" functional areas are: (1) "understanding, remembering, or applying information"; (2) "interacting with others"; (3) "concentrating, persisting, or maintaining pace";

7

and (4) "adapting, or managing oneself." *Anthony M.* v. *Commissioner*, Civil Action No. SAG-19-651, 2020 WL 434581, at *2 (D. Md. Jan. 28, 2020) (citing 20 C.F.R. § 404.1520a).  An ALJ must follow the special-technique regulation, 20 C.F.R. § 404.1520a, "[w]hen evaluating and documenting the severity of a claimant's mental impairment at steps 2 and 3—and its concomitant impact on the [residual functional capacity] assessment relevant to step 4." *Patterson*, 846 F.3d at 659.  The severity determination is distinct from the assessment of residual functional capacity, which occurs after step three.  *See, e.g.*, *Anthony M.*, 2020 WL 434581, at *3 (explaining that "the limitations identified in the 'paragraph B' criteria are not [a residual functional capacity] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process") (internal quotations and citations omitted).

A claimant's residual functional capacity is determined using a two-step process.  The ALJ must first "identify the individual's functional limitations . . . and assess his or her work-related abilities on a function-by-function basis."  SSR 96-8p, at 61 Fed. Reg. 34,475.  In so doing, the ALJ "must consider all the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'"  *Thomas* v. *Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe*, 826 F.3d at 188) (alteration in original); *see also* SSR 96-8p, 1996 WL 374184, at *5 (stating that when assessing a claimant's residual functional capacity, an ALJ must consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not severe").  "The function-by-function approach asks the ALJ to consider a claimant's specific 'exertional and nonexertional functions.'"[8]  *Ladda* v. *Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. 2018)

---

[8] "Exertional capacity . . . defines the individual's remaining abilities to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34,474-01, 34,477 (July 2, 1996).  "Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's

(quoting SSR 96-8p, at 61 Fed. Reg. 34,476).  The ALJ then expresses a claimant's residual functional capacity "in terms of the exertional levels of work," such as "sedentary, light, medium, heavy, and very heavy."  SSR 96-8p, 61 Fed. Reg. at 34,475; *see also* 20 C.F.R. § 404.1567 (defining the physical exertion requirements of each exertional level of work).

While the SSA guidelines require a "function-by-function" analysis to determine a claimant's residual functional capacity, the Fourth Circuit has held that this analysis does not need to be explicit.  *Mascio*, 780 F.3d at 636 (rejecting "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis").  Instead, the key consideration is whether the ALJ identified the evidence relied upon in determining the claimant's residual functional capacity and built "an accurate and logical bridge from the evidence to that conclusion."  *Monroe*, 826 F.3d at 189 (internal quotation marks and citation omitted).  A proper residual functional capacity analysis "has three components: (1) evidence, (2) logical explanation, and (3) conclusion."  *Thomas*, 916 F.3d at 311.  The second component of this analysis, "the ALJ's logical explanation, is just as important as the other two."  *Id.*; *see also* SSR 96-8p, 61 Fed. Reg. at 34,478 ("The [residual functional capacity] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence.").  As relevant here, remand may be appropriate where the ALJ's residual functional capacity analysis "contains too little logical explanation for . . . meaningful appellate review," *Thomas*, 916 F.3d at 312, or the ALJ does not "follow the special-technique regulation" governing mental impairments, which "frustrates effective judicial review," *Patterson*, 846 F.3d at 658.

---

physical strength," such as stooping, climbing, reaching, seeing, hearing, speaking, understanding and remembering instructions, and tolerance of temperature extremes.  *Id.*

Here, Plaintiff argues that the ALJ found that he has a moderate limitation in "maintaining concentration, persistence, or pace" but did not "include a corresponding limitation in his [residual functional capacity] assessment or explain why no such limitation is necessary." ECF No. 13 at 9.  The Commissioner counters that the "ALJ discussed the relevant evidence, including Plaintiff's allegations, clinical findings, and medical opinion evidence, and ultimately assessed [a residual functional capacity] with numerous mental limitations that addressed the complexity of work Plaintiff could perform." ECF No. 15 at 8.  The undersigned concurs that the ALJ's residual functional capacity determination did not adequately address Plaintiff's moderate concentration, persistence, or pace limitations.

As noted, *see* I.C., *supra*, the ALJ evaluated the severity of Plaintiff's mental impairments by assessing his limitations in the "paragraph B" functional areas.  ECF No. 9-3 at 30–31.  The ALJ found that Plaintiff had moderate limitations in all four functional areas.  *Id.* With respect to the third functional area, the ALJ noted that the "medical evidence of record shows the claimant generally did not complain to treating practitioners of serious difficulty maintaining concentration, persistence, and pace." *Id.* at 30.  He further noted that medical evidence showed that Plaintiff had "some difficulty following instructions," "could not count . . . or spell backward[s]," and "did not complete all tasks, leaving out a key part of his 2D drawing." *Id.*  Nevertheless, "treating practitioners did not observe that the claimant was overly distractible or slow," and he reported engaging in activities that require concentration and persistence, including watching television, reading for pleasure, managing his mother's finances, and using a computer on a regular basis.  *Id.*

The ALJ expressly recognized, however, that his paragraph B findings "are not a residual functional capacity assessment" and that the residual functional capacity determination at steps four and five required "a more detailed assessment of areas of mental functioning." *Id*. at 31.

10

The residual functional capacity assessment requires the ALJ to evaluate whether Plaintiff's mental impairments call for any work-related functional limitations, and, if not, to explain why none are warranted. *Eiker* v. *Astrue*, Civil Action No. CBD-11-3584, 2013 WL 2149755, at *8 (D. Md. May 15, 2013).

The ALJ's decision includes a thorough review of Plaintiff's testimony, as well as the medical and other evidence in the record with regard to both his physical and mental impairments. ECF No. 9-3 at 31–36. Following this review, the ALJ concluded that while Plaintiff has severe physical and mental impairments, the evidence did not support the conclusion that Plaintiff was debilitated from these conditions. *Id.* at 35–36. As to Plaintiff's mental impairments, in particular, the ALJ found that those impairments "have been stable with treatment." *Id.* at 35. The ALJ noted that following his mother's stroke, Plaintiff lives with and cares for her on a daily basis. *Id.* at 35–36. As part of his caretaking role, Plaintiff cooks, cleans, manages his mother's finances and medications, lifts her, and, in essence, "does everything for her." *Id.* at 36. The ALJ concluded that "[r]ecords are consistent with th[e] narrative that [Plaintiff] stopped work to care for his mother." *Id.*

The ALJ's discussion of the medical and other evidence, including Plaintiff's capacity and daily activities, does not, however, create a "logical bridge" to his conclusion regarding the concentration, persistence, and pace limitations contained within his residual functional capacity determination. *Monroe*, 826 F.3d at 189. The residual functional capacity addressed Plaintiff's limitation in this area by noting that "[t]ime off task during the workday can be accommodated by normal breaks, i.e.[,] he is able to sustain concentration and attention for at least 2 hours at a time." ECF No. 9-3 at 31 (bold removed). Decisions of this Court have consistently recognized that, standing alone, "accommodating time off-task with normal scheduled breaks . . . is insufficient to account for moderate [concentration, persistence, and pace] limitations because

normal breaks are customary even for workers *without* [concentration, persistence, and pace] limitations.  *Mary G.* v. *Bisignano*, Civil Action No. CDA-24-1473, 2025 WL 2097423, at *5 (D. Md. July 24, 2025) (emphasis in original); *accord Kevin R.* v. *Kijakazi*, Civil Action No. BAH-22-2985, 2023 WL 5831182, at *3 (D. Md. Sept. 8, 2023); *Richardson* v. *Berryhill*, Civil Action No. TJS-17-1523, 2018 WL 11474067, at *3 (D. Md. June 25, 2018); *Ludlow* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. SAG-15-3044, 2016 WL 4466790, at *2 (D. Md. Aug. 23, 2016); *see also* SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996) (noting that a normal workday consists of "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals").

The ALJ also included a limitation that Plaintiff "perform jobs consisting of simple, routine, and repetitive tasks, involving only simple, work-related decisions."  ECF No. 9-3 at 31 (bold removed).  Taken together, these two limitations are also inadequate to address moderate concentration, persistence, pace limitations.  *Richardson*, 2018 WL 11474067, at *3 ("Limiting [Plaintiff] to work that involves simple tasks and includes normal breaks does not account for her moderate difficulties in concentration, persistence, and pace."); *accord Evan H.* v. *Kijakazi*, Civil Action No. BAH-23-72, 2023 WL 6216647, at *4 (D. Md. Sept. 25, 2023); *Chad H.* v. *Kijakazi*, Civil Action No. BAH-22-1241, 2023 WL 2837524, at *3 (D. Md. Apr. 6, 2023); *Ludlow*, 2016 WL 4466790, at *2.

The ALJ's inclusion of other limitations, such as "occasional interaction with supervisors, coworkers, and the public" and "only occasional changes in the routine work setting" does not alter the analysis.  ECF No. 9-3 at 31 (bold removed).  As this Court has previously observed, "neither Defendant nor the ALJ provides clarity on how these limitations are relevant to Plaintiff's ability to concentrate, persist, or maintain pace.  Indeed, these limitations appear to relate to areas of mental functioning *other* than concentration, persistence,

or maintaining pace." *Chad H.*, 2023 WL 2837524, at \*4 (emphasis in original); *see also*

*Deangelo S.* v. *Bisignano*, Civil Action No. TJS-25-417, 2026 WL 84270, at \*2 (D. Md. Jan. 12,

2026) (finding that "limitations that [Plaintiff] can remember and carry out only simple

instructions and only occasionally interact with the public, coworkers, and supervisors . . .

address [his] ability to handle complexity and to interact with others, but they do not address his

limitations in maintaining concentration, persistence, or pace").

In sum, the ALJ's finding that Plaintiff has a moderate concentration, persistence, and

pace limitation required that the ALJ either include a corresponding limitation in the residual

functional capacity determination or explain why no such limitation was necessary. Failure to do

so precludes meaningful judicial review and thus requires remand. *Mascio*, 780 F.3d at 638;

*Patterson*, 846 F.3d at 659.

## III.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is reversed, and the case is

remanded for further proceedings consistent with this Memorandum Opinion pursuant to

sentence four of 42 U.S.C. § 405(g). In remanding for further explanation and analysis, the

Court offers no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled

to benefits is correct. A separate Order follows.

Date:  March 6, 2026

                                    _____/s/_____
                                    Erin Aslan
                                    United States Magistrate Judge